Gary Kirchhoff, M.D.
189 Middlecreek Court
Moneta, VA 24121
Telephone: (540) 420-7541
Email: Kirchhoffg@aol.com

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 09 2018

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| Gary Kirchhoff, M.D., individually *pro se*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18 - |
| vs. | ) | 7:18CV489 |
| | ) | |
| UNITED STATES GOVERNMENT, Department of | ) | |
| the Army, Walter Reed National Military Medical | ) | |
| Center, (Ret. Col.) Paul Mongan, M.D., William S. | ) | |
| Arimony, Esq., Law Offices of William S. Arimony, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### A.  COMPLAINT

COMES NOW the plaintiff, Gary Kirchhoff, M.D., individually *pro se*, and files this Complaint
against the defendants as follows:

### B.  PARTIES

1.    Plaintiff, Gary Kirchhoff, M.D. is an individual representing himself *pro se* with residence
located at 189 Middlecreek Court, Moneta, Virginia 24121.  Plaintiff, Gary Kirchhoff, M.D., is
hereinafter referred to as "Dr. Kirchhoff," "plaintiff," or the same.

2.    Defendant, the United States Government, is a government entity with principle offices located
in Washington, D.C.  The United States Government may be served by and through the U.S. Attorney
General, Jefferson Sessions, at his principle place of business, the Department of Justice, 10th Street &
Constitution Avenue, N.W., Washington, D.C. 20530. Defendant, the United States Government, is
hereinafter referred to as the same, "the Army," "defendant(s)" or "the government."

3.    Defendant, the Department of the Army, is a government entity with principle offices located in
Washington, D.C.  Defendant, the Department of the Army, may be served by and through the Secretary

1

of the United States Army, Dr. Mark T. Esper, at his principle place of business, 101 Army Pentagon, Washington, D.C. 20310. Defendant, the Department of the Army, is hereinafter referred to as the same, "the government," "the Army," "ABCMR" or "defendant."

4.    Defendant, Walter Reed National Military Medical Center, Bethesda Naval Hospital, is a tri-service military medical center comprised of doctors, health care workers and administrators engaged in providing health care for patients with principle offices located at 8901 Rockville Pike, 6th Floor, Bldg. 1, Bethesda, Maryland 20889. Defendant Walter Reed National Military Medical Center, may be served by and through their Staff Judge Advocate Commander Michael Stutt, at his primary place of business located at: Staff Judge Advocate's Office, 8901 Rockville Pike, 6th Floor, Bldg. 1, Bethesda, Maryland 20889. Defendant, Walter Reed National Military Medical Center, is hereinafter referred to as the same, "Walter Reed," "Walter Reed NMMC," "Walter Reed Medical Center," "Walter Reed Army Medical Center," "WRAMC," "the Army," or "defendant.

5.    Defendant, (Ret. Col.) Paul Mongan, M.D., is a physician and retired colonel from the United States Army with residence located at: 548 8th Avenue North, Jacksonville Beach, Florida 32250. Defendant (Ret. Col.) Paul Mongan, M.D., may be served at his residence located at: 548 8th Avenue North, Jacksonville Beach, Florida 32250. Defendant, (Ret. Col.) Paul Mongan, M.D., is hereinafter referred to as the same, "Col. Mongan," "Walter Reed," "the Army" or "defendant."

6.    Defendant, Attorney William S. Arimony, Esq., is an attorney with primary offices located at: Law Offices of William S. Arimony, Old Town Alexandria, 100 N. Pitt St., #200, Alexandria, Virginia 22314. Defendant, Attorney William S. Arimony, Esq., may be served summons at his primary place of business: Law Offices of William S. Arimony, Old Town Alexandria, 100 N. Pitt St., #200, Alexandria, Virginia 22314. Defendant, Attorney William S. Arimony, Esq., is herein after referred to as: "Attorney Arimony," "the Army," "defendant," or the same.

7.    Defendant, Law Offices of William S. Arimony, is a law firm with primary offices located at: Old Town Alexandria, 100 N. Pitt St., #200, Alexandria, Virginia 22314. Defendant, Law Offices of William S. Arimony, may be served summons through their resident agent William S. Arimony, Esq. at

his primary place of business:  Law Offices of William S. Arimony, Old Town Alexandria, 100 N. Pitt St., #200, Alexandria, Virginia 22314.  Defendant, Law Offices of William S. Arimony, is herein after referred to as: "Attorney Arimony," "the Army," "United States government," "government, "defendant," or the same.

### C.  FACTS PERTAINING TO THE PARTIES

8.    Plaintiff Gary Kirchhoff, M.D., is an anesthesiologist with over 20 years of experience. He worked as such in the United States Army active duty from 2007 to 2011.

9.    Plaintiff Gary Kirchhoff, M.D., is a United States citizen and a resident of the state of Virginia.

10.   Defendant, the United States Government, consists of a President, his cabinet, Congress and various local, state and national actors and entities engaged in authoritative control and governance of the United States of America.  The United States Government is hereinafter referred to as the same, "the Army"  or  "the government."

11.   Defendant, the Department of the Army, is an agency under the President that is engaged in defending the United States of America against attacks by foreign countries. The Department of the Army is a branch of military service under the Department of Defense.

12.   James N. Mattis is the current Secretary of Defense under President Donald Trump. At the time of the alleged acts which occurred in this matter, John M. McHugh was the Secretary of the Army under President Barack Obama.

13.   Defendant, Walter Reed National Military Medical Center., is the Army medical center where plaintiff Dr. Kirchhoff received his two-month training after he joined the Army Reserves in 2007.

14.   Defendant, Paul Mongan, M.D., is a retired colonel with the United States Army who was the commander over plaintiff  Dr. Gary Kirchhoff when he worked in the Army Reserves at Walter Reed Medical Center from 2007 to 2008. Col. Paul Mongan retired in August 2008.

15.   Defendant, Attorney William S. Arimony, Esq., is an attorney with the United States Army Reserves who represented plaintiff Dr. Gary Kirchhoff from 2009 to 2011 after he lost his medical privileges.

16.   Defendant, Law Offices of William S. Arimony, Esq., is the law office of defendant William S. Arimony who represented plaintiff Dr. Kirchhoff from 2009 to 2011.

17.   All of the defendants are government actors and/or entities of the United States, engaged in the business of defending our country against hostile action by other countries. All of the defendants had knowledge of this matter and were involved in the collusion, conspiracy, fraud and unethical government conduct that ensued.

### D. FACTS PERTAINING TO THE CASE

18.   Plaintiff Gary Kirchhoff, M.D., was an anesthesiologist in Florida for 18 years. Then he moved to Virginia in 2001.

19.   In 2007, Dr. Kirchhoff had been making about $250,000 annually in his medical practice.

20.   In April 2007, his motivational statement given to the Army mentioned his goal of giving direction to the constant process of quality improvement at Walter Reed National Military Medical Center (EXHIBIT A).

21.   Dr. Kirchhoff was given a commission of Lieutenant Colonel in the Army Reserves for his many years in practice as an anesthesiologist. Prior to this, he had been in the Air Force Reserves during Desert Storm.

22.   After a short introduction to Walter Reed Army Medical Center, he was sent to office basic training for two months in the summer of 2007.

23.   While he was there, he never wore a uniform and flew back and forth to work weekly in his private airplane.  Other officers were jealous of him because of this, and didn't like it that he was receiving a commission and bonus after his schooling there.

24.   For eight months, he shared an office with five military-trained doctors who were making $499,000 annually under an Indian contract with the government. In contrast, Dr. Kirchhoff was making about $200,000 annually, but three colonels including Col. Mongan who was the commander over him were only making $60,000 - $80,000 annually.

25.   During this time, Dr. Kirchhoff was frustrated that the practice of medicine at Walter Reed

4

was archaic, antiquated and substandard. As an example, regional anesthesia (blocks) were not working on patients and he mentioned this to a colonel who was Col. Mongan's good buddy.

26.   Dr. Kirchhoff continued to report that the Army was teaching a medical residency program that was substandard and resulting in incompetently trained doctors and offered to help improve this.

27.   Then when Dr. Kirchhoff returned to WRAMC in May 2008, without any prior incidents or even an explanation, his privilege to practice medicine was suddenly suspended by the Army.

28.   The Army medical officers excluded him in any discussion of this suspension, and there was no alternate option of suspension with re-education to return to practicing anesthesiology in the Army.

29.   The allegations by the Army against Dr. Kirchhoff were maliciously and falsely made by defendant Col. Paul Mongan and other members of the Army at Walter Reed.  Colonel Mongan was the ringleader in conspiring with the other defendants to cause him to lose his medical privileges.

30.   Col. Mongan retired from the Army in August 2008 and moved to Florida.

31.    It became apparent to plaintiff that the Army intended to revoke his medical privileges and involuntarily discharge him from the service altogether.

32.   In June 2009, Dr. Kirchhoff contacted defendant Attorney William S. Arimony, Esq. with the Law Offices of William S. Arimony to represent him. He signed a contract with him and paid him $50,000 for representation to try and gain back his medical privileges.

33.   At that time, he told Attorney Arimony that he felt he was being retaliated against by the Army and Col. Mongan because they were jealous of him and because he had reported that medical training at Walter Reed was substandard.

34.   Attorney Arimony told plaintiff that the Army Board of Corrections for Military Records (ABCMR) was not interested in errors made by the Army, only in the deviation of due process as stated in Army Regulations Chapter 10, 40-68. He told him the Army makes mistakes and their errors were unimportant in trying to get his privileges back.

35.   Dr. Kirchhoff tried to acquire a copy of all of his medical records himself and through Attorney Arimony; however, the Army refused to release them.

5

36.   Attorney Arimony told plaintiff to try and file a Freedom of Information Act (FOIA) request to acquire his medical records to delay his case further. His FOIA request was denied twice.

37.   Of the three allegations against Dr. Kirchhoff, one involved an 85-year old woman who was brought in to the emergency room. Dr. Kirchhoff was accused of delaying her surgery in an emergency situation; however, her vital signs were never taken upon her arrival and not until the next day so her case was not an emergency.

38.   The 85-year old woman later underwent surgery and recovered, so no harm was done. The Army used her situation to retaliate against Dr. Kirchhoff and revoke his medical privileges.

39.   Attorney Arimony told plaintiff that the only way that he could regain his medical privileges was to file an appeal of the decision through the Army board of corrections.

40.   On January 7, 2009, the United States Army Medical Command revoked Dr. Kirchhoff's clinical privileges based on "failure to document pre-anesthetic evaluations, failure to exercise sound professional judgment in selecting anesthetic agents, unnecessary delaying emergency surgery, unprofessional handling of supervisory responsibilities for resident physicians, and disregard of patient safety concerns." On June 3, 2009, his privileges were permanently revoked.

41.   When this occurred, plaintiff's name was entered into the National Practitioner's Data Bank (NPDB) that identified him as guilty of malpractice and incompetent in the medical profession. As a result, the states of Virginia and Washington wanted to prosecute him.

42.   Attorney Arimony told plaintiff he should hire a private practice lawyer in Washington to represent him. He and his law firm were conspiring with the other defendants against Dr. Kirchhoff to give him ineffective assistance of counsel and drag the matter out further so that he would miss any deadlines for filing a lawsuit through another attorney or by himself if he ever acted *pro se.*

43.   As a way of dragging the matter out, Attorney Arimony told Dr. Kirchhoff that he needed to acquire letters by prominent physicians to support his claim that he practiced the proper standard of care with regard to the allegations against him.

44.   On September 9, 2009, Dr. Michael Roizen of the Cleveland Clinic wrote a letter in support

of Dr. Kirchhoff's standard of care concerning the allegations against him (EXHIBIT B).

45.   In addition, Dr. Richard Kaplan, Division Chief of Anesthesiology and Pain Medicine at National Children's Medical Center in Washington, D.C. and nationally recognized author and speaker on the topic of Pediatric Anesthesiology, reviewed the pediatric case against Dr. Kirchhoff and confirmed that his practice of medicine was within the standards of clinical practice (EXHIBIT C).

46.   Dr. Phillip Bodenstab, a physician of more than 40 years and board certified in three specialties, reviewed the cases alleged by the military physicians as substandard, and confirmed that Dr. Kirchhoff's medical care was in fact the standard of care.

47.   Dr. John Peder Erickson, a board certified pediatric anesthesiologist and Assistant Professor of Anesthesiology and Critical Care at the University of Chicago with more than 30 years experience, reviewed the medical records of the pediatric case alleged by the Army physicians to be substandard and confirmed in writing that the practice standards of Dr. Kirchhoff were within the acceptable standards of clinical practice (EXHIBIT D).

48.   Dr. Kirchhoff wanted to settle the matter through Attorney Arimony and his law firm, and he gave all of the above letters to him as evidence in his case.  However, they were ignored by the Army.

49.   Attorney Arimony and his law firm never told plaintiff at any time that prior to filing a lawsuit, he had to file an administrative claim under the Federal Tort Claims Act within two years of the time he learned about his injury or damage. Nor did they tell him that after a response by the Army, he had six months to file a federal lawsuit after the settlement offer was denied.

50.   It wasn't until February 6, 2011 that Attorney Arimony and his law firm filed an appeal for Dr. Kirchhoff with the ABCMR.

51.   Plaintiff had been telling Attorney Arimony multiple times to file a lawsuit. However, he and his law firm continually made excuses and kept dragging the matter on.

52.   In October 2011, Attorney Arimony and his law firm told plaintiff that filing a lawsuit against the Army would cost too much, that he didn't have a basis for suing them because they failed to follow due process, and that he had no damages and would not be able to collect for lost wages.

53.    Attorney Arimony and his law firm were negligent in their representation of Dr. Kirchhoff and engaged in legal malpractice. They breached their duty owed to plaintiff in this matter.

54.    After two years of giving plaintiff ineffective assistance of counsel and his legal matter going nowhere, Dr. Kirchhoff fired Attorney Arimony. He then tried to find another lawyer but was unsuccessful.

55.    Dr. Kirchhoff began writing letters to try and get his medical privileges back which had been unfairly taken away by the defendants. In his 12-page letter, he included medical records and the four letters from prominent physicians supporting him which amounted to 100 pages.

56.    From March 2009 to August 2017, he sent this packet of information to numerous agencies and individuals, including: Senator Barbara Mulkulski, Senator Mark Warner, the Department of Defense, Attorney General Eric Holder, President Barack Obama, Senator Tim Kaine, Secretary of Defense Ashton Carter, the ACLU, the FBI, the New York Times, the Washington Post and others. However, none of them apparently read it and no action was ever taken to assist him.

57.    In 2011, Dr. Kirchhoff was given an involuntary discharge by the Army. He had been receiving specialty pay in the amount of $46,000 annually and another $15,000 annually, and the Army wanted to recoup $46,000 of this money as a result.

58.    In order to pay back this amount, the Army began to draw from plaintiff's Social Security in 2013 when he turned 62. They began deducting $256 from his monthly check to pay this back to them.

59.    As a result of the unethical and illegal practices of the defendants in this matter, Dr. Kirchhoff was unable to acquire employment as an anesthesiologist from 2009 to 2013. He had no income and was forced to draw Social Security.

60.    Plaintiff has been continually stressed for ten years since his assets were being drained by the defendants. His suffering includes anxiety attacks, depression and insomnia and he has had to seek the help of a psychiatrist who prescribed him two anti-depressants.

61.    The defendants conspired against Dr. Kirchhoff in this matter and their intent was to try and drive him out of money by revoking his medical privileges so that he could never get another job.

62.   Since 2013, Dr. Kirchhoff has been receiving Social Security in the amount of $1,700 per month for a total of $20,400 annually.

63.   In the past nine years, Dr. Kirchhoff has lost an estimated $2,394,000 in income as a result of the defendants' retaliatory acts against him.

64.   In April 2018, Dr. Kirchhoff contacted a non-profit organization that offers assistance in legal education. They told him that conspiracy form

65.   It was at this time that Dr. Kirchhoff was told that his rights had been violated, especially his right to due process of law under the 5th Amendment to the U.S. Constitution, and that he had grounds to sue the Army and Attorney Arimony pursuant to 42 USC 1983 Denial of Rights Under Color of Law.

66.   Up until April 2018, Dr. Kirchhoff was unaware of the conspiracy and fraud-related crimes which had violated his rights and that he was within the statute of limitations for suing the defendants.

67.   The failure of the Army to follow its own rules and regulations (Rule 10) and the acts and failures to act by the defendants' and other state actors to continually keep plaintiff from acquiring justice denied him due process of law under the Fifth Amendment as applied to the states through the 14th Amendment and was a denial of rights under Color of Law pursuant to 42 USC 1983.

68.   Plaintiff suffered severe mental anguish and bodily harm as a result of the defendants' acts and failures to act. This included: depression, anxiety, insomnia and caused him to drink heavily.

69.   His anger, frustration and hostility over the loss of his assets, inability to find work and his constant efforts to acquire justice in this matter also caused him to lose many friends.

70.   Colonel Mongan spearheaded the devious plan by the defendants to deplete Dr. Kirchhoff of his assets and prevent him from acquiring gainful employment.

71.   The actions of the defendants in this matter were willful and wanton and with malice toward the plaintiff. They violated his rights under the Whistleblower Protection Act of 1989.

72.   Plaintiff has exhausted all administrative efforts in this matter after trying to appeal the initial decision through his lawyer Attorney Arimony and then writing to the Army, government officials and entities numerous times.

73.   Plaintiff is justified in his claims involving denial of freedom of speech and due process of law pursuant to 42 USC 1983.  Due to the outrageous government conduct by the defendants, he cannot acquire effective assistance of counsel and must proceed *pro se* in this matter.

74.   All of the defendants engaged in Denial of Rights Under Color of Law (42 USC 1983) toward plaintiff by violating his right to freedom of speech under the First Amendment and ensuring that he did not receive effective assistance of counsel so as to deny him due process of law under the Fifth Amendment to the U.S. Constitution as applied to the states through the 14th Amendment.

75.   All of the defendants violated Dr. Kirchhoff's rights under the Fifth Amendment by prolonging this matter without good cause to deny him due process of law and with the objective of depleting his income and assets as a retaliatory measure.

76.   Defendants engaged in conspiracy, negligence, misrepresentation and concealment which caused plaintiff to rely to his detriment so that he suffered emotional distress and bodily harm.

77.   Plaintiff has exhausted all administrative efforts and demanded that defendants take action to make plaintiff whole for his losses. Defendants have refused plaintiff's demands.

## E.  LAW & ANALYSIS

Defendants violated numerous national laws, statutes, ordinances and regulations, including but not limited to:  Denial of Rights Under Color of Law (42 USC 1983), First Amendment right to freedom of speech and the right to be free from retaliation, due process right not to be deprived of property under the Fifth Amendment (as incorporated to the states through the 14th amendment) and right to be heard, the Whistleblower Protection Act of 1989, misrepresentation/concealment and emotional distress. Denial of Rights Under Color of Law 42 USC 1983 states:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States **or any other person within the jurisdiction thereof** to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

This applies to the plaintiff through the states under the 14th Amendment, since "all persons shall not be deprived of …life, liberty, or property, without due process of law; nor deny to any person

within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, § 1.

The federal court has jurisdiction in this matter under 28 U.S.C. 1331, since the plaintiff is suing the United States Army and affiliates and because Constitutional rights were violated. The overt acts engaged in by the defendants to deprive plaintiff of his assets include, but are not limited to: participating in a devious plan to revoke his medical privileges to deplete his income and assets and try to drive him into poverty, deny his appeal, enter his name into the national database so that he could not acquire gainful employment as an anesthesiologist, ensure that he was given ineffective assistance of counsel in pursuing his dispute, and engaging in meetings, telephone calls, correspondence, texts, e-mails, and other communications to illegally deprive him of his property and assets. These communications were the overt acts used by the defendants to deny plaintiff his right to be heard and influence his attorney and other state actors to go along with their retaliatory plan to violate his rights.

This case warrants claims involving bad faith, manifest injustice and obstruction of justice due to the defendants' acts and failures to act in their conduct toward Dr. Kirchhoff. Accordingly, he is justified in alleging each of the following claims against the defendants and in his request for punitive damages.

### F.  CAUSES OF ACTION

#### 1.  Violations of Plaintiff's First Amendment Rights
#### (as Incorporated to the States through the 14th Amendment)

78.  Plaintiff incorporates by reference paragraphs 1 through 77 of this Complaint.

79.  Under 42 USC 1983 Color of Law, the conduct of the defendants to participate in a plan to retaliate against plaintiff through the revocation of his medical privileges caused plaintiff to be denied his freedom of speech and right to be free from retaliation as a citizen of the United States and deprived him of his right to life, liberty, and property without due process of law under the First Amendment secured by the United States Constitution as applied to the states through the 14th Amendment.

80.  Under 42 USC 1983 Color of Law, the conduct of the defendants to participate in a plan to retaliate against plaintiff through the revocation of his medical privileges and the resulting effects caused plaintiff as a citizen of the United States to be deprived of his unalienable right to "life, liberty,

and the pursuit of happiness" under the Declaration of Independence.

81.   Acting under the color of state law @42 USC 1983, the defendants' participation in a plan to retaliate against plaintiff included influencing state actors to infringe on the plaintiffs' civil rights protected by the First Amendment right to freedom of speech protected by the U.S. Constitution.

82.   Violations occurred in the form of selective retaliation when defendants conspired to revoke plaintiff's medical privileges, caused him to be involuntarily discharged and his name registered in a national data bank so that he could not acquire gainful employment in his chosen profession and lost over $2,000,000 in income over a five-year period.

83.   Acting under the color of state law @42 USC 1983, the above conduct of the defendants deprived plaintiff of his "right to life, liberty and property" without due process of law and equal protection as applied to the states through the 14th Amendment.

84.   The conduct of the defendants in retaliating against plaintiff in the aforementioned manner constitutes a violation of plaintiff's rights under the First Amendment to the United States Constitution, as incorporated to the States through the 14th Amendment and the Whistleblower Protection Act of 1989.

85.   The defendants owed plaintiff a duty under the 1st and 14th Amendments and under the not to violate his rights under the United States Constitution as citizens of the United States or under the Whistleblower Protection Act of 1989.

86.   Defendants breached their duty owed to plaintiff.

87.   The defendants' conduct constitutes liability to the plaintiff for his injuries.

88.   As a result of the defendants' conduct to deprive plaintiff of his right to freedom of speech, his unalienable "right to life, liberty and pursuit of happiness" under the Declaration of Independence, his right not to be deprived of life, liberty or property without due process of law as applied to the states through the 14th Amendment, and infringing on plaintiffs' civil rights protected by the First Amendment right to freedom of speech under the U.S. Constitution by causing state actors to breach their duty owed the plaintiff, has caused him damaged in excess of $250,000.

WHEREFORE, plaintiff respectfully requests judgments of the court against the above named

defendants awarding to plaintiff (i) damages in excess of $250,000.00; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney's fees, for this action; (iv) injunctive relief enjoining the defendants from continuing their harm; and (v) any other relief deemed just and equitable by the court.

### 2.  Violations of Plaintiff's Fifth Amendment Rights
### (as incorporated to the States through the 14th Amendment)

89.   Plaintiff incorporates by reference paragraphs 1 through 88 of this Complaint.

90.   The conduct of the defendants in depriving Dr. Gary Kirchhoff of his property (income and assets) without due process of law constitutes a violation of plaintiff's rights under the Fifth Amendment to the United States Constitution, as incorporated to the States through the 14th Amendment.

91.   The conduct of the defendants to deny Dr. Gary Kirchhoff his right to be heard without due process of law constitutes a violation of plaintiff's rights under the Fifth Amendment to the United States Constitution, as incorporated to the States through the 14th Amendment.

92.   The defendants owed Dr. Gary Kirchhoff a duty under the Fifth and 14th Amendments not to violate his rights under the United States Constitution as a citizen of the United States.  Their overt acts of fraud included denying him due process of law by influencing his attorney not to give him effective assistance of counsel for two years after he had paid $50,000 in attorney fees, failing to tell him that he had to file administrative claim within two years of the time he learned about his injury or damage or that after a response by the Army or that he had six months to file a federal lawsuit after the settlement offer was denied, and causing his name to be entered into the National Practitioner's Data Bank (NPDB) to deny him work thereafter.

93.   The conduct of the defendants to participate in a conspiracy to deprive Dr. Gary Kirchhoff of his income and assets and his right to be heard was an obvious interference with attorney/client privilege.

94.   Plaintiff relied in good faith that his attorney and his law firm, the Army and government officials would act legally and ethically in resolving his dispute.  The illegal and unethical conduct of the defendants to drag his matter out and never file a lawsuit constitutes denial of plaintiff's due process rights under the Fifth and 14th Amendments to the United States Constitution.

95.   The defendants breached the duty owed Dr. Gary Kirchhoff and willfully deprived him of his property and his right to be heard.

96.   As a result of the defendants' conduct to deprive Dr. Gary Kirchhoff of his due process rights, plaintiff has suffered damages in excess of $250,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $250,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; and (v) any other relief deemed just and equitable by the court.

### 3.  Misrepresentation and Concealment

97.   Plaintiffs incorporate by reference paragraphs 1 through 96 of this Complaint.

98.   The defendants' participation in a plan to give Dr. Gary Kirchhoff ineffective assistance of counsel, drag his matter out for two years, fail to file a lawsuit so that the statute of limitations would be up, fail to give him proper legal advice such as telling him or assisting him in filing an administrative claim within two years of the time he learned about his injury or damage, fail to tell him that after a response by the Army that he had six months to file a federal lawsuit after the settlement offer was denied, and falsely entering his name in the National Practitioner's Data Bank constitutes a knowing misrepresentation of the truth and concealment of material facts to induce plaintiff to act to his detriment.

99.   At all relevant times, Dr. Gary Kirchhoff was without knowledge or means of knowing the related aspects of how to legally and properly handle his dispute, but relying on the defendant's trust that his rights were not being violated.

100.   At all relevant times, Dr. Gary Kirchhoff believed and relied on the defendants that they were acting in good faith, believing they were properly helping him to resolve his dispute so that he could regain his medical privileges.

101.   At all relevant times, Dr. Gary Kirchhoff was unaware of the defendants' participation in a plan to conceal the truth in regard to revoking his medical privileges, to silence publicity and to cause him distress as they acted with willful rendering of imperfect performance in their respective positions.

14

102.   The defendants' participation in a plan to revoke Dr. Gary Kirchhoff's medical privileges was with the intent and full knowledge that their conduct was substantially certain to result in injury, his inability to acquire gainful employment in his profession and detriment to the plaintiff.

103.   By participating in the above plan, the conduct of the defendants constitutes conspiracy to engage in malpractice and misrepresent Dr. Gary Kirchhoff and cause him emotional distress.

104.   The defendants violated Dr. Gary Kirchhoff's right to be fairly represented in this matter.

105.   As a result of the above named defendants' conspiratorial acts, plaintiff has been damaged in excess of $250,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $250,000.00; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney's fees, for this action; and (iv) any other relief deemed just and equitable by the court.

### 4. Emotional Distress

106.   Plaintiff incorporates by reference paragraphs 1 through 105 of this Complaint.

107.   The defendants' conduct in participating in a devious plan to revoke Dr. Gary Kirchhoff's medical privileges to deprive him of his income and assets was extreme and outrageous.

108.   At all relevant times, the defendants' participation in the devious plan was intentional and with full knowledge that their conduct was substantially certain to result in severe emotional distress and bodily harm to Dr. Gary Kirchhoff.

109.   The conduct of the defendants to participate in a devious plan to deprive plaintiff of his income and assets for over five years was in bad faith, and violated the duties of good faith and fair dealing toward the plaintiff in this matter.

110.   Due to the defendants' acts and failures to act, plaintiff suffered emotional distress, mental anguish and bodily harm.

111.   The conduct of the defendants constitutes emotional distress.

112.   As a result of the emotional distress caused by all defendants, plaintiff has been damaged in

excess of $250,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $250,000.00 for each defendant; (ii) pre- and post judgment interest; (iii) costs, including reasonable attorney fees, for this action; (iv) injunctive relief enjoining all defendants from continuing the intentional infliction of emotional distress; (v) punitive damages; and (vi) any other relief deemed just and equitable by the court.

Respectfully submitted,

By_____
Gary Kirchhoff, individually *pro se*
189 Middlecreek Court
MonEta, VA 24121
Telephone: (540) 420-7541
Email: Kirchhoffg@aol.com

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

Respectfully submitted,

By:_____
Gary Kirchhoff, individually *pro se*
189 Middlecreek Court
Moneta, VA 24121
Telephone: (540) 420-7541
Email: Kirchhoffg@aol.com

## DESIGNATION OF TRIAL

Plaintiff designates Roanoke, Virginia as the location for the trial in this matter.

Respectfully submitted,

By:_____
Gary Kirchhoff, individually *pro se*
189 Middlecreek Court
Moneta, VA 24121
Telephone: (540) 420-7541
Email: Kirchhoffg@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on this ___9___ day of October, 2018, a copy of the above and foregoing Complaint was filed with the United States District Court for the Western District of Virginia and deposited in the United States Mail, postage prepaid and properly addressed, to:

U.S. Dept. of Army
Attn: Dr. Mark T. Esper
101 Army Pentagon
Washington, D.C. 20310

(Ret. Col.) Paul Mongan
548  8th Avenue North
Jacksonville, FL 32250

William S. Arimony
Law Offices of William S. Aramony
100 N. Pitt St., #200
Alexandria, VA 22314

Law Offices of William S. Arimony
Attn: William S. Arimony, Esq.
100 N. Pitt St., #200
Alexandria, VA 22314

Walter Reed National Military Medical Center
Bethesda Naval Hospital
Attn: SJA Commander Michael Stutts
8901 Rockville Pike, 6th Floor, Bldg. 1
Bethesda, MD 20889

Attorney General Jeff Sessions
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Thomas T. Cullen
U. S. Attorney's Office
Western District of Virginia
P.O. Box 1709
Roanoke, VA 24008-1709

Gary Kirchhoff, individually *pro se*
189 Middlecreek Court
Moneta, VA 24121
Telephone:  (540) 420-7541
Email: Kirchhoffg@aol.com