CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 3 0 2019

JULIA C. DUDLEY, CLERK
BY: /s/ ASeaal
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GARY KIRCHHOFF, M.D., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES GOVERNMENT, et al., ) <br> ) <br> Defendants. ) | Civil Action No. 7:18CV00489 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Senior United States District Judge |

Gary Kirchhoff, M.D., proceeding pro se, filed this action against the United States, the Department of the Army, Walter Reed National Military Medical Center ("Walter Reed"), Ret. Col. Paul Mongan, M.D. (Colonel Mongan and collectively, the "federal defendants"), William S. Arimony, Esq., and the Law Offices of William S. Arimony (collectively, the "Arimony defendants"). The case is presently before the court on the defendants' motions to dismiss. For the reasons set forth below, the court will grant the defendants' motions.

## Background

The following factual allegations, taken from the plaintiff's complaint, are accepted as true for purposes of the pending motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 924 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

Dr. Kirchhoff is an anesthesiologist and former Army officer. Compl. ¶¶ 8, 18, 21, Dkt. No. 1. He began working at Walter Reed in 2007. Id. ¶ 13. Colonel Mongan was his commanding officer. Id. ¶¶ 14, 24.

Dr. Kirchhoff did not have a positive experience working at Walter Reed. He alleges that other officers, including Colonel Mongan, were jealous of him because he had a private airplane and never wore a uniform. Id. ¶ 23. Dr. Kirchhoff further alleges that "the practice of medicine at Walter Reed was archaic, antiquated, and substandard," and that its medical residency program produced "incompetently trained doctors." Id. ¶ 25. Dr. Kirchhoff shared his concerns with other officers, including one of Colonel Mongan's friends. Id.

In May of 2008, the Army abruptly suspended Dr. Kirchhoff's medical privileges. Id. ¶ 27. Dr. Kirchhoff maintains that the suspension was based on false allegations made by Colonel Mongan. Id. ¶ 29. The Army did not afford Dr. Kirchhoff the opportunity to participate in any discussions regarding the suspension or provide him with any other options. Id. ¶ 28. A few months later, Colonel Mongan retired from the Army and moved to Florida. Id. ¶ 30.

On January 7, 2009, the Army revoked Dr. Kirchhoff's clinical privileges. Id. ¶ 40. The decision was purportedly "based on 'failure to document pre-anesthetic evaluations, failure to exercise sound professional judgment in selecting anesthetic agents, unnecessary delaying emergency surgery, unprofessional handling of supervisory responsibilities for resident physicians, and disregard of patient concerns.'" Id. Dr. Kirchhoff's privileges were permanently revoked on June 3, 2009. Id.

That same month, Dr. Kirchhoff contacted the Law Offices of William S. Arimony in Alexandria, Virginia. Id. ¶ 32. Dr. Kirchhoff subsequently "signed a contract with [Arimony] and paid him $50,000 for representation to try and gain back his medical privileges." Id. Dr. Kirchhoff told Arimony that "he felt he was being retaliated against by the Army and Col. Mongan because they were jealous of him and because he had reported that medical training at Walter Reed was substandard." Id. ¶ 33. Arimony advised the plaintiff that the only way he could regain his

medical privileges was to file an appeal of the decision through the Army Board for Correction of Military Records ("ABCMR"). Id. ¶ 39. Arimony also indicated that Dr. Kirchhoff "needed to acquire letters by prominent physicians to support his claim that he practiced the proper standard of care with regard to the allegations against him." Id. ¶ 43. Dr. Kirchhoff did as he was instructed. Id. ¶¶ 44–47.

On February 6, 2011, Arimony filed an application with the ABCMR on behalf of Dr. Kirchhoff. Id. ¶ 50. The application was denied in October of 2011.[1] Dr. Kirchhoff asked Arimony to file a lawsuit on multiple occasions. Id. ¶ 51. In October of 2011, Arimony advised the plaintiff that "he didn't have a basis for suing" the Army and that "a lawsuit against the Army would cost too much." Id. ¶ 52. Consequently, Dr. Kirchhoff "fired" Arimony in 2011. Id. ¶¶ 16, 54. That same year, the Army involuntarily discharged Dr. Kirchhoff. Id. ¶ 57. His efforts to find another lawyer to represent him proved unsuccessful. Id. ¶ 54.

From 2009 to 2013, Dr. Kirchhoff was unable to work as an anesthesiologist. Id. ¶ 59. Consequently, he "had no income and was forced to draw Social Security." Id. Dr. Kirchhoff estimates that he lost over $2,000,000 in income as a result of the suspension and revocation of his medical privileges. Id. ¶ 63.

### Procedural History

Dr. Kirchhoff filed the instant action on October 9, 2018, alleging that the defendants conspired to revoke his medical privileges and prevent him from acquiring gainful employment. In Count I his pro se complaint, Dr. Kirchhoff claims that the defendants violated his rights under the First Amendment and the Whistleblower Protection Act of 1989. In Count II, the plaintiff claims that the defendants deprived him of income and assets without due process, in violation of

---

[1] The plaintiff has submitted a copy of a letter from the ABCMR informing him that his application was denied and that the Board's decision in his case was final. See October 14, 2011 Ltr., Dkt. No. 37-1.

the Fifth Amendment. In Count III, labeled "Misrepresentation and Concealment," Dr. Kirchhoff asserts that the defendants conspired to revoke his medical privileges, provide him with "ineffective assistance of counsel," "drag his matter out for two years," and "fail to file a lawsuit [within] the statute of limitations." Compl. ¶ 98; see also id. ¶ 103 (alleging that "the conduct of the defendants constitutes conspiracy to engage in malpractice and misrepresent Dr. Gary Kirchhoff and cause him emotional distress"). In Count IV, Dr. Kirchhoff asserts a claim for intentional infliction of emotional distress based on the defendants' purported plan to revoke his medical privileges and deprive him of income and assets.

The defendants have moved to dismiss the complaint under Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. The defendants' motions have been fully briefed and are ripe for review.[2]

## Standards of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for lack of subject matter jurisdiction. The plaintiff bears the burden of proving that subject matter jurisdiction exists. Evans v. B. F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Dismissal for lack of subject matter jurisdiction is appropriate "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (internal citation and quotation marks omitted). In deciding a motion to dismiss for lack of subject matter jurisdiction, the court may "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id.

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the

---

[2] The court has determined that oral argument would not aid the decisional process.

4

court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson, 551 U.S. at 94. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

### I. Claims Against the Federal Defendants

The federal defendants have moved to dismiss the claims against them for lack of subject matter jurisdiction. The federal defendants also argue that all of the plaintiff's claims are barred by the applicable statutes of limitations or otherwise subject to dismissal under Rule 12(b)(6). For the following reasons, the court will grant the federal defendants' motion.

#### A. Subject Matter Jurisdiction

The federal defendants first argue that the court lacks subject matter jurisdiction pursuant to the military abstention doctrine established in Feres v. United States, 340 U.S. 135 (1950). "Originally, Feres stood for the proposition that the Government is not liable under the Federal Tort Claims Act ("FTCA") for 'injuries to servicemen where the injuries arose out of or are in the course of activity incident to service.'" Aikens v. Ingram, 811 F.3d 643, 648 (4th Cir. 2016) (quoting Feres, 340 U.S. at 146). The Supreme Court has since "extended the Feres 'incident to service' test to causes of action outside the FTCA realm, including claims against federal officials

pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)." Id. (citations omitted). Likewise, the United States Court of Appeals for the Fourth Circuit has joined its sister circuits in extending the Feres doctrine to actions under 42 U.S.C. § 1983.³ Id. at 649.

To determine the applicability of the Feres doctrine, courts ask whether the injuries of which the plaintiff complains "'ar[ose] out of or [we]re in the course of activity incident to service.'" Id. at 650 (alterations in original) (quoting Feres, 340 U.S. at 146). The Supreme Court has declined to adopt any bright-line rules regarding what type of conduct is considered "incident to service." See United States v. Shearer, 473 U.S. 52, 57 (1985) ("The Feres doctrine cannot be reduced to a few bright-line rules . . . ."). Instead, courts consider "whether 'particular suits would call into question military discipline and decisionmaking [and would] require judicial inquiry into, and hence intrusion upon, military matters.'" Cioca v. Rumsfeld, 720 F.3d 505, 510 (4th Cir. 2013) (quoting Stanley, 483 U.S. at 682). "In other words, where a complaint asserts injuries that stem from the relationship between the plaintiff and the plaintiff's service in the military, the 'incident to service' test is implicated." Aikens, 811 F.3d at 651 (additional internal quotation marks omitted).

The Fourth Circuit has recognized that the scope of the Feres doctrine is extremely broad. See id. ("Feres has grown so broad that this court once noted, 'the Supreme Court has embarked on a course dedicated to broadening the Feres doctrine to encompass, at a minimum, all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military.") (emphasis omitted) (quoting Stewart v. United States, 90 F.3d 102, 105 (4th Cir. 1996)). Post-Feres decisions make clear that "a plaintiff need not be on duty" at the time of his

---

³ Section 1983, which is cited in Count I of the plaintiff's complaint, "applies only to state actors acting under color of state law, not to federal actors." Smith v. Donahoe, 917 F. Supp. 2d 562, 568 (E.D. Va. 2013) (citing Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998)).

injuries, that the application of the doctrine "does not depend on the military status of the alleged offender," and that the doctrine is not "restricted to actual military operations." Id. (citations omitted). Succinctly stated, "[p]ractically any suit that implicates the military's judgments and decisions runs the risk of colliding with Feres." Pringle v. United States, 208 F.3d 1220, 1224 (10th Cir. 2000) (emphasis and alterations omitted) (quoting Dreier v. United States, 106 F.3d 844, 848 (9th Cir. 1997)).

Against this backdrop, the court has no difficulty concluding that Dr. Kirchhoff's alleged injuries arose out of activities incident to his service in the military. Dr. Kirchhoff was on "active duty," working at a military medical center, when the Army suspended and ultimately revoked his medical privileges. Compl. ¶¶ 8, 27, 40. Taking the plaintiff's allegations as true, the Army revoked his medical privileges because Colonel Mongan and other officers were jealous of him and wanted to retaliate against him for complaining about the medical care and training provided at Walter Reed. While Dr. Kirchhoff "may claim that this is an 'egregious . . . infringement' of his rights, . . . there is no question that the alleged infringement occurred incident to [his] military service." Aikens, 811 F.3d at 651 (quoting Erwin Chemerinsky, Federal Jurisdiction 622 (5th ed. 2007)). Accordingly, the court concludes that the Feres doctrine applies to the constitutional and tort claims asserted against the federal defendants and that such claims are therefore subject to dismissal for lack of subject matter jurisdiction.[4] See Ortiz v. United States, 786 F.3d 817, 829 (10th Cir. 2015) (emphasizing that "Feres is a jurisdictional doctrine").

---

[4] To the extent that the plaintiff's claims against the federal defendants implicate the FTCA, the plaintiff is also unable to satisfy his burden of establishing subject matter jurisdiction because it is undisputed that the plaintiff failed to file an administrative claim with the appropriate federal agency. See 28 U.S.C. § 2675(a); Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) ("We have observed that 'the requirement of filing an administrative claim is jurisdictional and may not be waived.'") (quoting Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986)).

7

B.  **Statutes of Limitations**

The federal defendants also argue that all of the plaintiff's claims are barred by the applicable statutes of limitations. For the following reasons, the court agrees. Thus, even if the Feres doctrine is inapplicable to the plaintiff's claims, they are nonetheless subject to dismissal under Rule 12(b)(6). See Jones v. Bock, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . .").

A.  **Constitutional Claims**

The statute of limitations for constitutional claims under Bivens and § 1983 is borrowed from the forum state's personal injury statute. See Wilson v. Garcia, 471 U.S. 261, 276 (1985). Virginia has a two-year statute of limitations for personal injury actions. Va. Code § 8.01-243(A). Accordingly, a plaintiff seeking to bring a civil rights action under Bivens or § 1983 in Virginia must do so within two years after the cause of action accrues.

The question of when a cause of action accrues under Bivens or § 1983 is an issue of federal law. Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc). "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. Although "it is critical that the plaintiff kn[ow] that he has been hurt and who inflicted the injury," Id., the plaintiff need not know the full extent of his injuries before the statute of limitations begins to run. See Wallace v. Keto, 549 U.S. 384, 391 (2007) ("The cause of action accrues even though the full extent of the injury is not then known or predictable.").

8

In this case, Dr. Kirchhoff claims that the federal defendants revoked his medical privileges in retaliation for exercising his rights under the First Amendment and that he was denied due process in connection with the revocation of his medical privileges. The plaintiff's medical privileges were permanently revoked on June 3, 2009. The plaintiff believed at that time that "he was being retaliated against by the Army and Col. Mongan because they were jealous of him and because he had reported that medical training at Walter Reed was substandard." Comp. ¶ 33; see also id. ¶¶ 32–33 (alleging that he shared this information with Arimony in June of 2009). Nonetheless, Dr. Kirchhoff did not file the instant action until October of 2018, more than nine years later.[5] Consequently, the court concludes that his constitutional claims against the federal defendants are untimely.

The court further concludes that Dr. Kirchhoff fails to establish extraordinary circumstances warranting equitable tolling of the statutory period. "Plaintiffs are entitled to equitable tolling only if they show that they have pursued their rights diligently and extraordinary circumstances prevented them from filing on time." Raplee v. United States, 842 F.3d 328, 333 (4th Cir. 2016). The Fourth Circuit has explained that equitable tolling is reserved for "those 'rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" Whiteside v. United States, 775 F.3d 180, 184 (2014) (en banc) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)).

Dr. Kirchhoff appears to argue that the delay in filing the instant action is attributable to negligence on the part of Arimony. See, e.g., Compl. ¶ 51 ("Plaintiff had been telling Attorney

---

[5] The court also notes that the plaintiff's own exhibits indicate that, more than six years before the instant action was filed, the plaintiff began complaining to elected officials that the Army had retaliated against him "to cover-up the poor quality of medical care provided by the Army physicians," and that he had been denied due process in connection with the revocation of his medical privileges. See, e.g., July 9, 2012 Ltr. to Congressman Robert Hurt, Dkt. No. 37-7.

9

Arimony multiple times to file a lawsuit. However, he and his law firm continually made excuses and kept dragging the matter on."); Id. ¶ 53 ("Attorney Arimony and his law firm were negligent in their representation of Dr. Kirchhoff and engaged in legal malpractice . . . ."). However, "attorney 'negligence, even gross negligence,' does not qualify as an extraordinary circumstance for purposes of equitable tolling." Cromartie v. Ala. State Univ., 693 F. App'x 852, 853 (11th Cir. 2017) (quoting Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1227 (11th Cir. 2017)); see also Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226–227 (4th Cir. 2005) (holding that "attorney negligence -- including allowing a client's case to fall through the cracks -- is [not] . . . an 'extraordinary circumstance'" justifying equitable tolling). Nor does ignorance of the law, "even when a party does not have legal representation." Ott v. Md. Dep't of Pub. Safety & Corr. Servs., 909 F.3d 655, 661 (4th Cir. 2018).

For these reasons, the court concludes that it is clear from the plaintiff's complaint that his constitutional claims against the federal defendants are time-barred. Accordingly, the claims are also subject to dismissal under Rule 12(b)(6).

### B. Tort Claims

"The FTCA is the exclusive remedy for torts committed by a government employee in the scope of his employment." Goodwyn v. Simons, 90 F. App'x 680, 681 (4th Cir. 2004) (citing United States v. Smith, 499 U.S. 160 (1991)); see also Willoughby v. United States, 730 F.3d 476 (5th Cir. 2013) ("[The FTCA] is the exclusive remedy for suits against the United States or its agencies sounding in tort.") (citing 28 U.S.C. § 2679(a)). The FTCA's statute of limitation provides that a tort claim "shall be forever barred" unless it is presented "within two years after such claim accrues." 28 U.S.C. § 2401(b). As a general rule, a claim accrues "when the plaintiff

knows both the existence and the cause of his injury." United States v. Kubrick, 444 U.S. 111, 113 (1979).

It is clear from the complaint that the tort claims asserted against the federal defendants are barred by the statute of limitations. Each of Dr. Kirchhoff's claims is based on the revocation of his medical privileges and the acts or omissions of his attorney. See Compl. ¶ 98 (alleging that the defendants conspired to revoke his medical privileges, provide him with "ineffective assistance of counsel," "drag his matter out for two years," and "fail to file a lawsuit [within] the statute of limitations"); Id. ¶ 103 (alleging that "the conduct of the defendants constitutes conspiracy to engage in malpractice and misrepresent Dr. Gary Kirchhoff and cause him emotional distress"); Id. ¶ 107 (alleging that the plaintiff suffered emotional distress as a result of the defendants' "devious plan to revoke [his] medical privileges to deprive him of his income and assets"). As indicated above, Dr. Kirchhoff's medical privileges were permanently revoked in June of 2009, and he "fired" Arimony in 2011, after the attorney declined to file a lawsuit on his behalf. Compl. ¶¶ 52, 54. Thus, the statute of limitations applicable to the tort claims against the federal defendants has long expired and such claims are subject to dismissal under Rule 12(b)(6).[6]

### C. Whistleblower Claim

Dr. Kirchhoff also claims that the federal defendants violated the "Whistleblower Protection Act of 1989." Compl. ¶ 84. However, that Act does not apply to active or reserve uniformed services. See 5 U.S.C. §§ 2105 & 2302; see also Verbeck v. United States 89 Fed. Cl. 47, 61 (Fed. Cl. 2009) (explaining that the Whistleblower Protection Act applies to "civilian employees of the federal government"). Assuming that Dr. Kirchhoff intended to invoke the Military Whistleblower Protection Act of 1988 ("MWPA"), 10 U.S.C. § 1034, he "fares no better

---

[6] The court also notes that the United States is the only proper defendant in an FTCA action. See Webb v. Hamidullah, 281 F. App'x 159, 161 n.4 (4th Cir. 2008) (citing 28 U.S.C. § 2674); see also 28 U.S.C. § 2679(b)(1).

11

. . . because the statute does not 'provide . . . any private cause of action, express or implied.'" Jackson v. Spencer, 313 F. Supp. 3d 302, 308 (D.D.C. 2018) (quoting Acquisto v. United States, 70 F.3d 1010, 1011 (8th Cir. 1995)); see also Mackall v. United States Dep't of Defense, No. 1:17-cv-00774, 2017 U.S. Dist. LEXIS 191213, at *14 (D. Md. Nov. 20, 2017) ("[T]he MWPA only provides for administrative remedies; it does not provide a private cause of action.") (citations omitted). Accordingly, Dr. Kirchhoff's whistleblower retaliation claims must be dismissed.

D. **Request for Review of the Revocation of Medical Privileges and Involuntary Discharge**

Although Dr. Kirchhoff's complaint does not specifically cite to the Administrative Procedures Act ("APA"), 5 U.S.C.§ 701 et seq., the federal defendants liberally construe the complaint as requesting review of the adverse decisions made by the Army and the ABCMR. Under the APA, the court "may set aside an agency's actions or decisions if they are 'arbitrary, capricious, an abuse of discretion' or 'contrary to constitutional right.'" Roland v. United States Citizenship & Immigration Servs., 850 F.3d 625, 629 n.3 (4th Cir. 2017) (quoting 5 U.S.C. § 706(2)(A)–(B)). APA claims are subject to the six-year statute of limitations generally applicable to claims against the government. Id.; see also 28 U.S.C. § 2401(a). "Conduct becomes reviewable under the APA upon final agency action, in other words, when the agency has completed its decisionmaking process, and when the result of that process is one that will directly affect the parties." Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 186 (4th Cir. 1999) (internal quotation marks and alterations omitted). Thus, an APA claim "accrues at the time of a final agency action." Latin Ams. for Soc. & Econ. Dev. v. Adm'r of the Fed. Highway Admin., 756 F.3d 447, 464 (6th Cir. 2014) (citing 5 U.S.C. § 704)).

Here, the Army permanently revoked Dr. Kirchhoff's medical privileges on June 3, 2009. The plaintiff was involuntarily discharged from the Army in October of 2011. That same month,

12

the ABCMR denied his application for review and correction. Because Dr. Kirchhoff did not file the instant action until October 9, 2018, more than six years later, any APA claims arising from those decisions are time-barred.

## II. Claims Against the Arimony Defendants

The Arimony defendants have moved to dismiss the complaint under Rules 12(b)(5) and 12(b)(6). For the following reasons, the court concludes that the complaint fails to state a claim against the Arimony defendants.[7] According, the court will grant their motion to dismiss.

### A. Constitutional Claims

Dr. Kirchhoff alleges in a conclusory fashion that all of the defendants, including Arimony and his law firm, "are government actors and/or entities of the United States." Compl. ¶ 17. However, the complaint is entirely devoid of facts that would plausibly support the determination that the Arimony defendants are federal or state actors, or that they conspired with the federal defendants to violate the plaintiff's constitutional rights. See Cooney v. Rossiter, 583 F.3d 967, 971 (7th Cir. 2009) (emphasizing that, even before Twombly and Iqbal, "a bare allegation of conspiracy was not enough to survive a motion to dismiss for failure to state a claim"). Because the constitutional provisions cited in the complaint do not apply to private actors, Counts I and II fail to state a claim against the Arimony defendants.[8] See, e.g., Dixon v. Coburg Dairy, 369 F.3d 811, 817 n.5 (4th Cir. 2004) ("To the extent that Dixon's complaint can be interpreted as stating a cause of action based directly on the First Amendment, such a claim would be too insubstantial to invoke federal question jurisdiction because the First Amendment does not apply to private

---

[7] In light of the court's decision, the court need not address the alternative ground for dismissal under Rule 12(b)(5) based on insufficient service of process.

[8] Additionally, for the reasons set forth above, the plaintiff's constitutional claims are clearly time-barred.

13

employers."); Smith v. Kitchen, 156 F.3d 1025, 1028 (10th Cir. 1997) ("[E]ven if we were generously to construe Smith's complaint as raising a Bivens-style claim for conduct under federal law (which it is not), the claim still would be deficient as a matter of law because the underlying constitutional right that Smith asserts -- due process under the Fifth Amendment -- does not apply to the conduct of private actors who are defendants in this case.").

### B. State Law Claims

Liberally construed, the plaintiff's complaint also asserts claims of fraud, legal malpractice, and intentional infliction of emotional distress against the Arimony defendants. For the following reasons, the court agrees with the Arimony defendants that such claims must be dismissed as untimely.

Under Virginia law, a two-year statute of limitations applies to claims of fraud and intentional infliction of emotional distress. See Schmidt v. Household Fin. Corp., II, 661 S.E.2d 834, 838 (Va. 2008) ("The statute of limitations for actual fraud and constructive fraud . . . is two years.") (citing Va. Code § 8.01-243); Luddeke v. Amana Refrigeration, Inc., 387 S.E.2d 502, 504 (Va. 1990) ("[I]ntentional infliction of emotional distress, an action for personal injury, is governed by a two-year statute of limitations.") (citing Va. Code. § 801.243). A claim for fraud accrues "when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code Ann. § 8.01-249. "Any cause of action for intentional infliction of emotional distress accrues and the time limitation begins to run when the tort is committed." Mahony v. Becker, 435 S.E.2d 139, 141 (Va. 1993).

As indicated above, Arimony represented Dr. Kirchhoff "from 2009 to 2011." Compl. ¶ 15. Dr. Kirchhoff "fired" Arimony at the end of 2011, after the attorney declined to file a lawsuit on the plaintiff's behalf and advised him that "he didn't have a basis for suing" the Army.

14

Id. ¶¶ 52–54. Because Dr. Kirchhoff did not file the instant action until approximately seven years later, the court agrees with the defendants that the claims for fraud and intentional infliction of emotional distress are untimely. Although Dr. Kirchhoff summarily alleges that he was "unaware" of any "fraud-related crimes" until he contacted a non-profit legal organization in 2018, there is no simply no plausible basis for concluding that, "despite the exercise of due diligence, he could not have discovered the alleged fraud [except] within the two-year period before he commenced the action[.]" Schmidt, 661 S.E.2d at 839). As indicated above, ignorance of the law, even by pro se litigants, does not toll the limitations period. See Ott, 909 F.3d at 661. Nor does the "continuing violation" doctrine apply in the instant case. See Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 271 (4th Cir. 2013) (explaining that acts occurring outside the statute of limitations may be considered under the "continuing violation" doctrine only "when there is a fixed and continuing practice of unlawful acts both before and during the limitations period") (internal quotation marks omitted).

The court likewise concludes that any claim for legal malpractice against the Arimony defendants is time-barred. In Virginia, "[t]he statute of limitations for legal malpractice actions is the same as those for breach of contract because although legal malpractice sounds in tort, it is the contract that gives rise to the duty." Shipman v. Kruck, 593 S.E.2d 319, 322 (Va. 2004). A five-year statute of limitations applies to contract actions based on a written contract. Va. Code § 8.01-246. The statute begins to run "when the attorney's work on the particular undertaking at issue has ceased." Id. at 324; see also Moonlight Enters., LLC v. Mroz, 797 S.E.2d 536, 539 (Va. 2017) (explaining that "the limitation period . . . begins on . . . the date when the attorney renders his 'last professional services' related to the particular undertaking"). Because Arimony was

allegedly fired in 2011, Dr. Kirchhoff had until 2016 to pursue a claim for legal malpractice. Consequently, the instant action, filed two years later, is clearly untimely.

## Conclusion

For the reasons stated, the court will grant the defendants' motions to dismiss. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This 29th day of April, 2019.

/s/ Glen Conrad
Senior United States District Judge